THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v. BEAKES DAIRY COMPANY, Respondent.

Agricultural Law — provision that no person, firm or corporation shall buy milk or cream for shipment to any city, as a business, without having an office within the state and a license — penalty for violating such provision is imposed for the carrying on such business without a license, not for each separate purchase — action to recover penalty for each of a large number of purchases — complaint demurrable as not stating a cause of action — constitutional law — legislative power over domestic corporations — police power — class legislation — delegation of legislative power.

1. Section 55 of the Agricultural Law (Cons. Laws, ch. 1, amd. L. 1915, ch. 651) provides that no person, firm, association or *corporation* shall *as a business,* buy milk or cream within the state from

producers for the purpose of shipping the same to any city for consumption or manufacture without having a license. The complaint in this action charges in two hundred and ninety-eight separate counts that on or about a certain date defendant *bought milk or cream* from certain producers without having been duly licensed. The complaint does not allege that at any time defendant *carried on the business* of purchasing milk or cream. The offense of carrying on the business in violation of the statute should alone be pleaded and one penalty sued for. The complaint does not state facts constituting two hundred and ninety-eight causes of action, neither does it state facts constituting one cause of action. Defendant's demurrer should accordingly be sustained.

2. The question is not presented whether the statute is valid as an exercise of the police power of the state over individuals. As a corporation created by this state, defendant has no natural right to purchase milk without obtaining a license on such terms as the state directs, and since corporate charters may be altered or repealed, or qualified by reasonable restrictions, the action of the legislature so far as it affects plaintiff is valid and the act enforceable.

3. Equal protection of the laws is not denied when a class is selected for regulation by the legislature if a real distinction on a substantial basis is made the subject of class legislation.

4. Legislative power is not delegated when the legislature prescribes regulations to be enforced according to legal discretion of the commissioner of agriculture.

5. The Agricultural Law provides both criminal and civil liability for violations of its provisions.

*People* v. *Beakes Dairy Co.*, 179 App. Div. 942, affirmed.

(Argued January 21, 1918; decided February 12, 1918.)

APPEAL from a judgment, entered July 30, 1917, upon an order of the Appellate Division of the Supreme Court in the third judicial department, which reversed an order of Special Term denying a motion by defendant for judgment in its favor upon the pleadings and granted said motion.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Merton E. Lewis, Attorney-General (Charles M. Stern and C. T. Dawes* of counsel), for appellant. In so far

27

as the Beakes Dairy Company is concerned, the milk gathering statute can be sustained as an exercise of the reserved power of the state to amend the corporate charter of one of its own corporations. (*N. Y. C. R. R. Co.* v. *Williams*, 199 N. Y. 108; *Jeffrey Mfg. Co.* v. *Blagg*, 235 U. S. 571; *Berea College* v. *Kentucky*, 211 U. S. 45; *Adirondack Railway Co.* v. *New York State*, 176 U. S. 335; *N. Y. & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556; *People* v. *O'Brien*, 111 N. Y. 1; *Greenwood* v. *Freight Co.*, 105 U. S. 13; *Lord* v. *Equitable Life Assur. Co.*, 194 N. Y. 212; *S. L., I. M.*, etc., *Ry. Co.* v. *Paul*, 173 U. S. 404; *Mayor, etc.*, v. *Twenty-third St. R. R. Co.*, 113 N. Y. 311.) The state may constitutionally compel the licensing and bonding of any business which presents great opportunities for fraud. The defrauding of farmers throughout the state by "fly-by-night" milk gatherers was a matter of common knowledge when the state undertook to regulate the milk purchasing business. (*Dent* v. *Virginia*, 129 U. S. 114; *Musco* v. *United Surety Co.*, 196 N. Y. 459; *Fox* v. *Smith*, 123 App. Div. 369; *Stern* v. *M. L. Ins. Co.*, 169 App. Div. 217; *City of New York* v. *Vandewater*, 113 App. Div. 456; *People ex rel. Armstrong* v. *Warden*, 183 N. Y. 223; *Brazee* v. *Michigan*, 241 U. S. 340; *Grossman* v. *Caminez*, 79 App. Div. 15; *Cody* v. *Dempsey*, 86 App. Div. 335; *Fisher Co.* v. *Woods*, 187 N. Y. 90.) There has been no unconstitutional delegation of legislative power. The statute does not vest in the commissioner of agriculture power to arbitrarily excuse one person from the giving of a bond and require it of another. (*People* v. *Klinck Packing Co.*, 214 N. Y. 131; *Stern* v. *Met. L. Ins. Co.*, 169 App. Div. 220; *Vil. of Saratoga* v. *S. G. & El. Co.*, 191 N. Y. 123; *People ex rel. Lodes* v. *Dept. of Health*, 189 N. Y. 187.)

*Walter Jeffreys Carlin* for respondent. Section 55 of the Agricultural Law cannot be sustained on the ground

that it is an exercise of the reserved power to alter, amend or repeal the charter of a corporation. (*Rathbone v. Wirth,* 150 N. Y. 459; *Lawton v. Steele,* 119 N. Y. 226; *Skaneateles W. W. Co. v. Vil. of Skaneateles,* 161 N. Y. 154; 184 U. S. 354; *N. Y. & L. I. R. R. Co. v. O'Brien,* 121 App. Div. 819; 192 N. Y. 558; *Matter of N. Y. District R. Co.,* 42 Hun, 621; 107 N. Y. 42; *Matter of Village of Middletown,* 82 N. Y. 196; *People ex rel. Angerstein v. Kenney,* 96 N. Y. 294; *Duryea v. Mayor,* 96 N. Y. 477; *Field v. Clark,* 143 U. S. 696; *Ives v. S. B. Ry. Co.,* 201 N. Y. 271.) Section 55 of the Agricultural Law is unconstitutional, being in violation of both the State and Federal Constitutions. (*Ex parte Young,* 209 U. S. 123; *People v. Windholz,* 92 App. Div. 569; *People ex rel. Appel v. Zimmerman,* 102 App. Div. 103; *City of Watertown v. Rodenbaugh,* 112 App. Div. 723; *Grossman v. Caminez,* 79 App. Div. 15; *Cody v. Dempsey,* 86 App. Div. 335; *People ex rel. Duryea v. Wilbur,* 198 N. Y. 1; *Schnaier v. Navarre Hotel & Imp. Co.,* 182 N Y. 83; *People v. Beattie,* 96 App. Div. 383; *People ex rel. Moskowitz v. Jenkins,* 202 N. Y. 53; *People v. Gilbert,* 68 Misc. Rep. 48; *Tischer Co. v. Woods,* 187 N. Y. 90.) No action lies to recover a penalty for a violation of section 55 of the Agricultural Law. (*Excelsior Petroleum Co. v. Lacey,* 63 N. Y. 422; *Village of Depew v. L. V. R. R. Co.,* 85 Misc. Rep. 71; *Erie R. R. Co. v. Steward,* 59 App. Div. 187; *Wormser v. Brown,* 149 N. Y. 163; *People ex rel. Davidson v. Gilon,* 126 N. Y. 147; *Townsend v. Little,* 109 S. W. Rep. 504; *United States v. Lyman,* 11 Wall. 88; *People v. Van Nort,* 64 Barb. 205; *Dexter & Limerick Plank Road Co. v. Allen,* 16 Barb. 15; *Matter of Commissioners of Central Park,* 50 N. Y. 493.) If an action lies to recover a penalty for a violation of section 55, but one penalty can be recovered. (*Sturgis v. Spofford,* 45 N. Y. 446; *Fisher v. N. Y. C. & H. R. R. R. Co.,* 46 N. Y. 644; *Cox v. Paul,* 175 N. Y.

328; *Griffin* v. *Interurban St. Ry. Co.*, 179 N. Y. 438; 180 N. Y. 538; *U. S. Condensed Milk Co.* v. *Smith*, 116 App. Div. 15; *People* v. *Spence*, 201 N. Y. 105; *U. S.* v. *B. & N. R. R. Co.*, 14 Fed. Rep. 284; *U. S.* v. *Erie Ry. Co.*, 25 Fed. Cas. 1019; *Town of Flora* v. *Am. Express Co.*, 45 So. Rep. 149; *Washburn* v. *M'Inroy*, 7 Johns. 134.)

Pound, J. This is an action to recover judgment against defendant for two hundred and ninety-eight penal, ties of one hundred dollars each for buying milk or cream within the state from certain producers for the purpose of shipping the same to New York city for consumption or manufacture without having been duly licensed as provided by sections fifty-five and following of the Agricultural Law (Cons. Laws, ch. 1), added thereto by chapter 408 of the Laws of 1913, as amended by chapter 651 of the Laws of 1915. The principal provisions of the statute are as follows:

" § 55. *Licensing of milk gathering stations where milk is bought.* On and after September first, nineteen hundred and thirteen, no person, firm, association or *corporation*, shall buy milk or cream within the state from producers for the purpose of shipping the same to any city for consumption or for manufacture, unless such business be regularly transacted at an office or station within the state and unless such person, firm, association or *corporation* be duly licensed as provided in this and the ensuing sections of this article. Every such person, firm, association or *corporation* before engaging or continuing in the business of buying milk or cream for the purposes aforesaid, shall, annually, on or before August first, file an application with the commissioner of agriculture for a license to transact such business. The application shall state the nature of the business, as hereinabove set forth, the full name of the person or *corporation* applying for the license, and, if the applicant be a firm or association, the full name of each member of such firm, or association,

the city, town or village and street number at which the business is to be conducted, and such other facts as the commissioner of agriculture shall prescribe.     The applicant shall further satisfy the commissioner of his or its character, financial responsibility and good faith in seeking to carry on such business.     The commissioner shall thereupon issue to such applicant, on payment of ten dollars, a license entitling the applicant *to conduct the business of buying milk and cream from producers for the purpose aforesaid at an office or station at the place named in the application* until the first day of September next following.     *     *     *

"A license shall not be issued as provided in this section, on and after the taking effect of this section, unless the applicant for such license shall file with the application a good and sufficient surety bond, executed by a surety company, duly authorized to transact business in this state, *in a sum not less than five thousand dollars,* or shall be relieved from such requirement as provided herein.     Such bond shall be approved as to its form and sufficiency by the commissioner of agriculture.

"Such applicant may in lieu of such bond deposit with the commissioner of agriculture money or securities in which the trustees of a savings bank may invest the moneys deposited therein, as provided in the banking law, in an amount equal to the sum secured by the bond required to be filed as herein provided.

"The bond required to be filed hereunder shall be given to the commissioner of agriculture in his official capacity and shall be conditioned for the faithful compliance by the licensee with the provisions of this chapter, as hereby amended, *and for the payment of all amounts due to persons who have sold milk or cream to such licensee, during the period that the license is in force.*     *     *     *

"Upon default by the licensee in the payment of any money due for the purchase of milk or cream, which

payment is secured by a bond or the deposit of money or securities as hereinbefore provided for, the creditor may file with the commissioner of agriculture, upon a form prescribed by him, a verified statement of his claim. If such creditor shall have reduced such claim to judgment or shall thereafter and before the commencement of the action by the commissioner of agriculture, as hereinafter provided for, reduce such claim to judgment, a transcript of such judgment shall also be filed with such commissioner.   *   *   *

" After the expiration of ninety days from the termination of any license period the commissioner of agriculture shall, by proper action wherein all such creditors and any surety upon any bond given as hereinbefore provided for and the licensee shall be parties, *proceed to determine the amount due each such creditor, and the judgment rendered in such action shall be enforced ratably for such creditors against the surety on the bond, if one there be, or against the moneys or securities deposited as hereinbefore provided for.*   *   *   *

" A person or *corporation* licensed hereunder shall make a verified statement of his or its disbursements during a period to be prescribed by the commissioner of agriculture, containing the names of the persons from whom such products were purchased, and the amount due to the vendors thereof.   Such statement shall be submitted to the commissioner of agriculture when requested by him and shall be in the form prescribed by such commissioner. If it appears from such statement or other facts ascertained by the commissioner of agriculture, upon inspection or investigation of the books and papers of such licensee as authorized by section fifty-six of this chapter, that the security afforded to persons selling milk and cream to such licensee *by the bond executed or deposit made by such licensee as herein provided does not adequately protect such vendors, the commissioner of agriculture may*

*require such licensee to give an additional bond or to deposit additional moneys or securities,* to be executed or deposited as above provided, in a sum to be determined by the commissioner, but not exceeding by more than twenty-five per centum the maximum amount paid out by such licensee to sellers of milk in any one month. Provided, however, that the *maximum amount of the bond or deposit required from any applicant under the provisions of this section shall be one hundred thousand dollars;* and that any applicant filing a bond or depositing money or securities in such maximum amount shall be exempted from filing either the statements of milk purchased, or the statements of disbursements in this section provided for.

" If the applicant for a license under this section be a person or domestic corporation, the commissioner of agriculture may, notwithstanding the provisions of this section, *if satisfied from an investigation of the financial condition of such person or domestic corporation that such person or corporation is solvent and possessed of sufficient assets to reasonably assure compensation to probable creditors,* by an order filed in the department of agriculture, relieve such person or corporation from the provisions of this section requiring the filing of a bond.

" The term ' station ' or ' milk gathering station,' as used in this and the ensuing sections of this article, shall include an established office where the business of buying milk or cream as herein provided is carried on, with or without a place or premises in connection therewith for the physical handling of milk or cream."

To summarize the principal features of the enactment:

1. No person, firm, association or *corporation* shall *as a business,* buy milk or cream within the state from producers for the purpose of shipping the same to any city for consumption or manufacture without having (a) an established office within the state, and (b) a license.

2. No such person, firm, association or *corporation*

may obtain a license without (a) satisfying the commissioner of agriculture of his character and financial responsibility; (b) either by giving a surety company bond of not less than five thousand dollars or more than one hundred thousand dollars, or making a deposit of money or securities, or (c) if an individual or a domestic corporation, satisfying the commissioner that he "is solvent and possessed of sufficient assets to reasonably assure compensation to probable creditors."

3. On default of payment by a licensee of money due for the purchase of milk and cream the commissioner shall apply the security to the extinguishment of the claims of creditors filed with him.

Defendant is a domestic corporation. It demurred to each of the two hundred and ninety-eight causes of action set forth in the complaint on the ground that the facts stated do not constitute a cause of action, and moved for judgment on the pleadings. At the Special Term the motion was denied, but the Appellate Division reversed the order denying the motion and dismissed the complaint, one justice dissenting and one not voting, on the ground "that the purpose of the statute is to secure payment for the purchase price of merchandise and is class legislation and not a valid exercise of the police power."

Does an action lie to recover a penalty for violation of section 55 of the Agricultural Law? Section 61 provides that "any person who * * * not being licensed, shall *conduct the business of buying milk* for shipment as provided in section 55, * * * shall be guilty of a misdemeanor." But the Agricultural Law (Section 52) also provides for penalties to be collected in a civil action. "Every person violating any of the provisions of this chapter, shall forfeit to the People of the State of New York the sum of not less than fifty dollars nor more than one hundred dollars for the first violation."

When sections 55 to 61 became a part of " this chapter " (Laws 1909, ch. 9, being chapter 1 of the Consolidated Laws, known as the Agricultural Law) the provisions of section 52 applied automatically to violations thereof, except where obvious inconsistencies arose. Far from being an inconsistency, it is in entire harmony with the general purpose of the Agricultural Law to provide both criminal and civil liability for violations of its provisions.

Is a violation of the provisions of section 55 charged in the complaint? The grievance to be complained of is not each act of purchasing, but the act of *conducting the business of purchasing.* The complaint charges in two hundred and ninety-eight separate counts that on or about a certain date, each count setting forth a different date, defendant *bought milk or cream* from certain producers without having been duly licensed. Each count must be read separately as if it were the only count. The complaint does not allege that at any time defendant *carried on the business* of purchasing milk or cream. Carrying on the business within the terms of the statute implies continuity of conduct in that respect, a continuous course of dealing, not an isolated transaction. (*Penn Collieries Co.* v. *McKeever,* 183 N. Y. 98; *People ex rel. Allen* v. *Whiting,* 68 Misc. Rep. 306.) Section 52 of the Agricultural Law provides for separate penalties for separate acts of selling, exposing for sale, using and the like, but no provision is made for cumulative penalties in case the purchasing is carried on or continued from day to day. The offense of carrying on the business in violation of the statute should alone be pleaded and one penalty sued for. (*People* v. *Spencer,* 201 N. Y. 105.) The complaint does not state facts constituting two hundred and ninety-eight causes of action, neither does it state facts constituting one cause of action. Defendant's demurrer should accordingly be sustained and this opinion might end at this point.

We are asked, however, to pass upon the constitutionality of the statute. Courts often say that they will withhold a decision on the constitutionality of a statute until it becomes unavoidable for the determination of the case (*Hanrahan* v. *Terminal Station Com. of Buffalo,* 206 N. Y. 494, 504), but it seems like an anti-climax to the careful presentation of this appeal on constitutional grounds to dispose of it temporarily as a mere matter of the wording of the complaint. Defendant urges that this is a statute to compel the payment of indebtedness; that nothing in the business of purchasing milk or cream carries with it any special necessity for imposing unusual burdens upon those who carry it on; that the statute has no relation to the public health, morals, safety or convenience or any great public need; that it is unmistakably and palpably in excess of the legislative power; that it violates the due process clauses of the State and Federal Constitutions; that it is also objectionable as " class legislation " and because it delegates legislative power to the commissioner of agriculture. Plaintiff, on the other hand, contends that, as harmful business may be prohibited, so useful businesses may be regulated when the public interests will be thereby subserved; that a useful business may, by reason of local conditions or customs, prove a menace to the public welfare; that it must be presumed that this business has fittingly come under the legislative eye and rule for the reason that when unrestricted it had become or threatened to become the cause of more than ordinary loss to a considerable class in the community and that the manner of regulation is a matter of legislative discretion.

To hold a statute unconstitutional is a grave thing to do. To refuse, by so doing, to recognize a demonstrated evil and to characterize the unusual in legislation as impossible is unwise. Constitutional law is " to a certain extent, a progressive science " (*Holden* v. *Hardy,* 169

U. S. 366, 385), and the courts have become more cautious "about pressing the broad words of the Fourteenth Amendment to a drily logical extreme." (*Noble State Bank* v. *Haskell,* 219 U. S. 104, 110.)

So many decisions of the courts of this state and of the United States have dealt with the question of legislative power that only a few of the most recent will be considered. We may begin with the proposition that the state may not *prohibit* the lawful, common and ordinary business of purchasing milk or cream (*People ex rel. Tyroler* v. *Warden, etc.,* 157 N. Y. 116; *Fisher Co.* v. *Woods,* 187 N. Y. 90; *Adams* v. *Tanner,* 244 U. S. 590), but it may regulate a business, however honest in itself, if it may become a medium of fraud. It is not enough to say that the business may be honestly conducted. The state may, to some extent, compel honesty by imposing a license fee if widespread frauds upon and losses by its people are thereby prevented. Any trade, calling or occupation may be reasonably regulated if "the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the legislature can properly protect them." (*Allen* v. *Riley,* 203 U. S. 347; *Brazee* v. *Michigan,* 241 U. S. 340, 343.) Passing from the general to the particular, the constitutionality of the "Blue Sky Laws" of Ohio and other states which require dealers in corporate stocks and other securities to be licensed has been upheld. (*Hall* v. *Geiger-Jones Co.,* 242 U. S. 539; *Caldwell* v. *Sioux Falls Stock Yards Co.,* 242 U. S. 559; *Merrick* v. *Halsey & Co.,* 242 U. S. 568.) The evils of "get-rich-quick" schemes called for protection against the frauds of unscrupulous dealers. Licenses may be required for employment agencies. (*Brazee* v. *Michigan, supra; People ex rel. Armstrong* v. *Warden, etc.,* 183 N. Y. 223.) The business of banking by individuals and partnerships has been held subject to license (*Musco* v. *United Surety*

Co., 196 N. Y. 459, 465; *Engel* v. *O'Malley*, 219 U. S. 128) " because fraud could be practiced in it." The business of selling patent rights, being peculiarly one in which fraud may be practiced, may be regulated. (*Allen* v. *Riley, supra.*) Even " ice cream " may be standardized by state legislatures in order that consumers may not be misled (*Hutchinson Ice Cream Co.* v. *Iowa*, 242 U. S. 153), and a standard size of bread loaves may be fixed. (*Schmidinger* v. *City of Chicago*, 226 U. S. 578.)

But all these statutes and many others have for their legitimate object the prevention of frauds, rather than the collection of debts through the agency of the state. This statute points to protection from the probability of financial loss rather than fraud and goes far beyond any mere licensing statute by requiring the licensee to give security for payment of his debts to purchasers. The business regulated is not done with ignorant people, the chosen and easy prey of the cunning and unscrupulous impostor. It is done with men of ordinary intelligence, fully conscious of what they are about. " The state must adapt its legislation to evils as they appear." (McKENNA, J., in *Merrick* v. *Halsey & Co., supra.*) If the legislature can check impending ills before they become notorious, the courts should not say that it has acted too soon. As suggested by *Klein* v. *Maravelas* (219 N. Y. 383) that which seems vain and capricious to one generation may become the wisdom of the next. But it is urged that so much of this statute as aims to compel certain purchasers of milk to pay their debts, measured by the standards of the obligations of the state to its citizens as we now understand them, is a hateful interference with the freedom of men to transact ordinary business, not affected with a public interest, with other men as they see fit; that its implication is that bad debts may be secured or prevented by the exercise on the part of the state of its power to regulate

trades and callings; that this is a doctrine of paternalism in direct conflict with our judicial notion of liberty under the Constitution. (*Schnaier* v. *Navarre H. & I. Co.,* 182 N. Y. 83; *People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126; *People* v. *Ringe,* 197 N. Y. 143; *People ex rel. Duryea* v. *Wilber,* 198 N. Y. 1; *People ex rel. Moskowitz* v. *Jenkins,* 202 N. Y. 53; *Hauser* v. *No. British & M. Ins. Co.,* 206 N. Y. 455.)

The question is not presented whether the statute is valid as an exercise of the police power of the state over individuals; nor is the determination of that question essential to the decision of this case. The question here is whether the defendant, a domestic corporation, is affected by the alleged unconstitutionality of the statute in the features complained of. If it is not, it cannot complain. (*Jeffrey Manfg. Co.* v. *Blagg,* 235 U. S. 571, 576; *Cusack Co.* v. *City of Chicago,* 242 U. S. 526, 530.)

Whatever might be said of the statute as "class legislation" (*State* v. *Latham,* 98 Atl. Rep. 578, Supreme Judicial Court of Maine, September 8, 1916) is answered by *People* v. *Havnor* (149 N. Y. 195, 205). The statute there under consideration placed barbers in a class by themselves and then subdivided the class between barbers in New York and Saratoga and barbers elsewhere for the purpose of regulating their right to work on Sunday; but VANN, J., said, "the statute treats all barbers alike within the same localities * * * under like circumstances and conditions * * *." There is no constitutional prohibition against class legislation as such if the classification is based on some reasonable ground, and is not essentially arbitrary. The statutes are replete with instances where the legislature has selected a class of persons for regulation. (*People* v. *Klinck Packing Co.,* 214 N. Y. 121, 137.) It is only where there is no real distinction on a substantial basis that it can be said that the equal protection of the laws is denied. (*Gulf, Col. & S.*

*F. Ry.* v. *Ellis*, 165 U. S. 150; *Southern Ry. Co.* v. *Greene*, 216 U. S. 400; *Lindsley* v. *Natural Car. Gas Co.*, 220 U. S. 61.)

Nor can it be said that the power vested in the commissioner of agriculture to waive the requirement of a bond or other security in certain cases is a delegation of legislative power. He is not left " without check or guidance." The legislature has furnished the rule; the commissioner merely applies it. His determination is subject to judicial review. (Section 58.) In *People* v. *Klinck Packing Co.* (*supra*) the provisions of the statute exempted from the application of the hours of rest law certain employees, " if the commissioner of labor in his discretion approves." Those words were held to have the vice of vesting the commissioner with the power wholly at his volition to suspend the operation of the statute. The legislature here prescribes the regulations which are to be enforced according to the legal discretion of the commissioner. (*Brazee* v. *Michigan, supra.*) Nor does it appear that defendant has applied for and failed to obtain a license without giving a bond. (*Lehon* v. *City of Atlanta*, 242 U. S. 53.)

Is the statute good as the exercise of the lawful power of the state over a domestic corporation? As a corporation created by this state, defendant has no natural right to purchase milk without obtaining a license on such terms as the state directs. Corporate charters may be altered or repealed. (Const. of N. Y. art. 8, sec. 1.) Under the guise of an amendment to corporate charters the legislature may not defeat or substantially impair the object of the grant, the right of the corporation to transact business, but it may qualify it by reasonable restrictions. (*Sutton* v. *New Jersey*, 244 U. S. 258; *Noble State Bank* v. *Haskell*, 219 U. S. 104, 110.) In *Berea College* v. *Kentucky* (211 U. S. 45) a statute provided that " it shall be unlawful for any person, *corpora-*

*tion* or association of persons to maintain or operate any college, school or institution " where both whites and negroes were taught. Recognizing the power of the legislature to so amend the charter of Berea College or of all domestic corporations, the test applied was whether the law would have been enacted as to corporations alone had it appeared that it would be invalid as applied to the privileges of individuals, and it was held that the fact that *corporations were separately mentioned in the act* justified the inference that the statute was separable and was to be so construed as to be upheld as to corporations under the reserved power to amend corporate charters. " The act itself, being separable, is to be read as though it in one section prohibited any person, in another section any corporation, and in a third any association of persons to do the acts named. Reading the statute as containing a separate prohibition on all corporations, at least, all state corporations, it substantially declares that any authority given by previous charters to instruct the two races at the same time and in the same place is forbidden, and that prohibition being a departure from the terms of the original charter in this case may properly be adjudged an amendment." (p. 57.) The dissenting opinion of HARLAN, J., emphasizes the distinction between persons and corporations made by the prevailing opinion. It characterizes the effect of the decision as making a law in violation of the legislative intent and against the fair presumption that equality of treatment was intended. Corporations are separately named in the act before us repeatedly and with sedulous care and the act is not distinguishable in that respect from the case cited. (*N. Y. C. & H. R. R. R. Co.* v. *U. S.*, 212 U. S. 481, 497; *Citizens Ins. Co.* v. *Clay*, 197 Fed. Rep. 435, 437.)

In *New York C. & H. R. R. R. Co.* v. *Williams* (199 N. Y. 108, 116) this court, in dealing with the provisions of the

Labor Law requiring payment of employees of certain classes of corporations and persons in cash and on the 1st and 15th of the month, approved the doctrine of the *Berea College* case. It said: " The constitutionality of the statute is not questioned here by any individuals   *   *   * and *even if the enactment should be deemed unconstitutional so far as persons are concerned the provision relating to them is readily separable from the rest of the statute relating to corporations and its invalidity in this respect, if so adjudged, need not affect the application of the provision to steam surface railroad corporations.* It matters not that both provisions are contained in the same section.   *   *   * In New York a special charter may be amended by a general act which does not refer specifically to such charter.   *   *   * Such was the effect given by the Supreme Court of the United States to a general statute of Kentucky which was construed as operative to amend the charter of Berea College   *   *   *."

When the companion case of *Erie R. R. Co.* v. *Williams* (199 N. Y. 525; affd., 233 U. S. 685), involving the constitutionality of the same provisions of the Labor Law, reached the Supreme Court of the United States, it was said that " cost and inconvenience would have to be very great before they could become an element in the consideration of the right of a state to exert its reserved power." (p. 700.)

The *Ives Case* (201 N. Y. 271, 290) decided nothing contrary when it held that the Workmen's Compensation Act of 1910 could not be upheld in part under the reserved power of the legislature to alter and amend corporate charters. Corporations were not specifically mentioned in the statute. The plaintiff waived the point. As in the *Employer's Liability Cases* (207 U. S. 463) the court declined to modify the statute in order to save part of it by writing into it words not found in it which would, if so written, be indicative of the legislative intent.

Thus viewed, the statute as applied to the defendant merely means that it cannot continue the business of purchasing milk or cream as defined by the statute, unless it satisfies the commissioner of agriculture that it is solvent, or gives a bond or other security. As an exercise of the reserved power to amend corporate charters, this regulation may, as to this class of corporations, be salutary. It is not for us to say that it cannot be. If the law is to this extent valid, we are not concerned with the abstract question of its justice or fairness.

The judgment of the Appellate Division should be affirmed, with costs.

HISCOCK, Ch. J., CHASE, HOGAN, MCLAUGHLIN and ANDREWS, JJ., concur; CARDOZO, J., concurs in result.

Judgment affirmed.