THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ANTONIO PERRETTA, Respondent. (Actions Nos. 1 and 2.)*

Fourth Department, January 15, 1930.

---

* Affg. 134 Misc. 652, but revd., 253 N. Y. 305.

*Hamilton Ward, Attorney-General [George L. Flanders' and Louis B. Shay* of counsel], for the appellant.

*Nicholas G. Powers,* for the respondent.

CROUCH, J.   These actions were brought by the State to enforce a penalty against the defendant for a violation of the provisions of section 252 of the Agriculture and Markets Law (Laws of 1922, chap. 48, as amd. by Laws of 1927, chaps. 207, 416).   The defendant was alleged in the complaint to have been conducting the business of operating a milk-gathering station or plant where milk was purchased from producers, without being licensed as required by the section of the law mentioned.   The complaints differ merely in charging the conducting of the business upon different dates. Upon motions by the defendant to dismiss the respective complaints on the ground that the complaints failed to state facts sufficient to constitute causes of action, the defendant prevailed and each of the complaints was dismissed, it being held that the act in question (Agr. & Mkts. Law, § 252), was unconstitutional under the Federal and State Constitutions (N. Y. Const. art. 1, § 6; U. S. Const. 14th Amendt. § 1).

The conclusion reached by the learned justice at Special Term was based upon the theory that the condition imposed by the statute as a prerequisite to obtaining a license, namely, the filing of a bond as provided by section 253 of the statute (as amd. by Laws of 1927, chaps. 207, 416, and Laws of 1928, chap. 194), conditioned not only upon obedience of the terms of the statute, but expressly on the payment of debts due producers, transcended the limits of the police power in that its purpose was merely to secure to producers the purchase price of merchandise.

We are disposed to agree with that conclusion.   We think the cases here must be ruled by the decision in *People* v. *Beakes Dairy Co.* (222 N. Y. 416).   The statute involved is substantially the same.   There by dictum — which under the circumstances of that case has for us the practical effect of authority — the court upheld under the reserved power legislation which it plainly intimated was unconstitutional under the police power when applied to an individual.   It is suggested in the minority opinion here that, since the reserved power like the police power is subject to the limitations imposed by the due process and equal protection clauses of the State and Federal Constitutions, we must necessarily disregard that intimation and hold the statute valid.   We do not look upon that conclusion as a necessity.   If we must speculate upon what the holding in the *Beakes* case would have been had the defendant been an individual instead of a corporation, we think we must be guided

by the considered view indicated or perhaps expressed in the opinion.

But if we were at liberty to consider the question *de novo*, and had to do so in the light of the present record and briefs, our decision would be the same. Apart from a recent tendency, induced perhaps by post-war conservatism, the boundaries of the police power have been pricked out by decided cases in ever-widening lines. It still remains true, however, that "the Legislature may not, under the guise of protecting the public interest, arbitrarily interfere with private business or impose unusual and unnecessary restrictions upon lawful occupations." (*Fisher Co.* v. *Woods*, 187 N. Y. 90, 94.)

Whether, in any particular instance, the Legislature has or has not done that must depend upon an investigation or consideration of the factual situation behind or bearing upon the statute. All we know here, except facts of common knowledge referred to below, appears on the face of the statute itself; and that shows its primary and, as we think, its only object to be a private benefit, not a public need. If there are any facts to support the claim of ultimate public interest, they are not so commonly known as to have come to our attention. So far as we know or have been able to learn, there is no legislative, departmental or other report covering the subject, such as was before the court in *Musco* v. *United Surety Co.* (196 N. Y. 459) and in *People ex rel. Durham Realty Corp.* v. *La Fetra* (230 id. 429). The court has not been furnished with "Facts of Knowledge" by means of an economic and sociological brief as in *Muller* v. *Oregon* (208 U. S. 412) and *People* v. *Schweinler Press* (214 N. Y. 395). There is not even the more or less customary assertion in the statute itself of a public necessity or purpose.

We do know that milk is a necessity of urban life. We do not know of any facts which would lead us reasonably to believe that the things exacted by this statute from those who buy milk from producers are prerequisities to an adequate city milk supply. We should have supposed that the ordinary economic inducements were still sufficient to that end. We do know, in a general way, that a considerable proportion of milk producers, through the medium of a co-operative membership corporation, is adequately protected and derives no direct personal benefit from this statute; and so far as that large body of producers is concerned, the argument of ultimate public necessity also falls. We know, too, that in the villages and smaller cities the producers in the adjacent territory peddle their own milk. Here again the argument is inapplicable. The proportion of the total milk supply left seems insufficient as a basis for predicting the serious and widespread shortage which it is said will follow in the absence of the benefits conferred on

producers by the statute. Nor is sight to be lost of the close relations between production and distribution. A clog on the latter may very well interfere with the former.

Moreover, there is no substantial claim here that the business of buying and distributing milk as it now exists " is or may become an instrument of widespread oppression " (*People ex rel. Durham Realty Corp.* v. *La Fetra*, 230 N. Y. 429, 451), or that it is or may become a medium of fraud (*People* v. *Beakes Dairy Co., supra*) or that it is or may become a danger to public safety, health, morals or general welfare (*Safee* v. *City of Buffalo*, 204 App. Div. 561).

Before a common and ordinary business is subjected to police interference, some such danger to the public interest should be reasonably shown to exist. In short, we are unable to see and (if we apply the objective standard) we think a reasonable man would be unable to see, in a degree that is perceptible and clear, a real evil reasonably to be anticipated and guarded against. In the light of our present knowledge, we see no object in the statute except the collection of ordinary debts through the agency of the State. " But a mere statute to compel the payment of indebtedness does not come within the scope of police regulations." (*Gulf, C. & S. F. R. Co.* v. *Ellis*, 165 U. S. 150, 158.)

The judgment should be affirmed, with costs.

All concur, except SEARS, P. J., and THOMPSON, J., who dissent and vote for reversal on the law and denial of the motion, in an opinion by SEARS, P. J. Present — SEARS, P. J., CROUCH, EDGCOMB, THOMPSON and CROSBY, JJ.

SEARS, P. J. (dissenting). The prevailing opinion on this appeal leans heavily upon the language of the Court of Appeals expressed in *People* v. *Beakes Dairy Co.* (222 N. Y. 416). I fully agree with the statement in the prevailing opinion that we should follow the elaborate dictum contained in the opinion in that case. But as I read that opinion it leads me to the conclusion that the statute here in question (except in one subordinate particular to be mentioned later) is within the police power of the State and not violative of either State or Federal Constitution. While it is true that reasons are there stated with considerable fullness why the legislation in question might seem to be beyond the limits of the police power, still the question is expressly left open. " The question is not presented whether the statute is valid as an exercise of the police power of the State over individuals; nor is the determination of that question essential to the decision of this case. The question here is whether the defendant, a domestic corporation, is affected by the alleged unconstitutionality of the statute in the features

complained of." (*People* v. *Beakes Dairy Co., supra,* 429.) And the conclusion is reached that, " As an exercise of the reserved power to amend corporate charters, this regulation may, as to this class of corporations, be salutary. It is not for us to say that it cannot be. If the law is to this extent valid, we are not concerned with the abstract question of its justice or fairness." (*People* v. *Beakes Dairy Co., supra,* 433.)

We have then a carefully considered pronouncement of the Court of Appeals that the statute as it then stood was not unconstitutional as it affected corporations.

This brings us to a consideration of the nature of the reserved power to amend and alter charters. Here again we have the authority of the Court of Appeals. In *Matter of Mount Sinai Hospital* (250 N. Y. 103) the subject is discussed as follows: " The reserved power to amend corporate charters prevents the charter from becoming a contract between State and corporation protected from impairment by the Constitution. [*Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518.] Under it anything may be done by the Legislature that could be done if the Federal Constitution did not prohibit a State from passing a law impairing the obligation of contracts. (U. S. Const. art.1, § 10.) Any alteration may be made ' which will not defeat or substantially impair the object of the grant, or any rights vested under it, and which the Legislature may deem necessary to secure either that object or any public right ' or ' to promote due administration of the affairs of the corporation.' [*Tomlinson* v. *Jessup,* 15 Wall. [U. S.] 454; *Holyoke Co.* v. *Lyman,* 15 Wall. [U. S.] 500, 519; *Miller* v. *State,* 15 Wall. [U. S.] 478, 498; *Close* v. *Glenwood Cemetery,* 107 U. S. 466, 476.) A State may not, by using the form of charter amendment, deprive a corporation of any of its substantial property or property rights, except in the legitimate exercise of the legislative or police power, under the due process and equal protection clauses of the State and Federal Constitutions. (*Zabriskie* v. *Hackensack, etc., R. R. Co.,* 18 N. J. Eq. 178, 192; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416.) In other words, a corporate charter is no longer a contract between the corporation and the State which the State may not alter without the consent of the corporation; but the corporation and its members are not subject to any kind of confiscatory legislation or discriminatory burden which takes the guise of an amendment to the charter."

The effect then of the reserved power to alter and amend charters is to deprive the charter of its character as a contract immune from impairment at the hands of the State. The reserved power to alter and amend charters does not affect the character of the corporation as a person whose liberty and property are consti-

tutionally guaranteed. The reserved power to alter and amend is frequently exercised in matters having no relation to the general police power, such, for example, as details of internal organization. The *Mount Sinai Hospital Case* (*supra*) involved such legislation. Where, however, a statutory regulation is attacked as depriving a corporation of liberty or property, the question involved is inherently one under the police power, and, in general, the limits must be the same whether the defense is phrased as being under the reserved power to alter and amend charters or under the police power of the State. (*Lake Shore, etc., R. Co.* v. *Smith,* 173 U. S. 684; *Payne* v. *Kansas ex rel. Brewster,* 248 id. 112; 3 Cornell Law Quar. 283; 40 Harvard Law Rev. 497.) All the reasons given in the *Beakes Dairy Co.* case for sustaining the legislation under the reserved power to alter and amend charters are equally cogent to sustain it under the police power. The statute is applicable by its terms to both individuals and corporations. There is no attempt to assign them to different classes. Despite what is said in the opinion in the *Beakes Dairy Co.* case as to the question of the constitutionality of the law as affecting individuals remaining open, that case determines that the legislation does not deprive persons of liberty or property within the meaning of the constitutional provisions. A corporation is no less a person entitled to protection under the State or Federal Constitution than is an individual. (*Liggett Co.* v. *Baldridge,* 278 U. S. 105; *Kentucky Co.* v. *Paramount Exchange,* 262 id. 544.) The legislation is a valid exercise of the police power.

Aside from the authority of the *Beakes Dairy Co.* case, I reach the same result. Milk producers, very generally, live in localities where the principal, if not the only reasonable outlet of their product is that of the receiving plant of the middlemen. Their choice of customers is, therefore, restricted. The opportunity to learn of the financial responsibility and standing of the purchaser of the dairy product is slight. The failure of such middlemen to meet their obligations to milk producers is indicated by the legislation to be an evil prejudicial to the interests of the State. The production of milk is of vital concern to the people. Uncertainty of payment under the circumstances might be expected to curtail its production. The Legislature finding here an evil has taken steps to check it. I may, of course, doubt whether such an evil exists. I cannot say with any fair degree of certainty that such an evil does not exist, or that reasonable men may not think so. All such matters are primarily for the consideration of the Legislature. We should not pronounce such a statute unconstitutional unless we can say with a fair degree of certainty that reasonable men may not here find an actual evil.

It is true that the legislation involves elements not found in the usual licensing acts. (*Payne* v. *Kansas ex rel. Brewster, supra; Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *People ex rel. Amstrong* v. *Warden, etc.*, 183 N. Y. 223; *Musco* v. *United Surety Co.*, 196 id. 459.) It even differs in degree at least from the legislation requiring a bond to insure payment by commission merchants. (*State of Kansas ex rel. Brewster* v. *Mohler*, 98 Kan. 465; *State* v. *Bowen*, 86 Wash. 23.) These distinctions, however, cease to be important if the legislation is reasonably adapted to check a public evil which may fairly be thought to exist. (*Matter of Stubbe* v. *Adamson*, 220 N. Y. 459; *People* v. *Weller*, 237 id. 316; *Biddles, Inc.*, v. *Enright*, 239 id. 354.)

I reach the conclusion that this legislation is within " the ever widening limits " of the police power, except in one subordinate element. In 1927 (Laws of 1927, chap. 416, amdg. Agr. & Mkts. Law, § 253) a provision was added to the statute to the effect that in case of default by the licensee as to any of the conditions of the bond, an action should be brought upon the bond by the Commissioner, who, after paying ratably all verified claims filed with him, should pay the rest of the amount recovered upon the bond into the State treasury. I agree with the learned justice who presided at Special Term that the forfeiture of the entire bond without reference to the amount of claims against the licensee, and the provision for payment of the balance after the payment of filed claims into the State treasury are wholly arbitrary and not reasonably adapted to checking or correcting the evil against which the statute is in part directed, that is, the non-payment of the licensee's bills to producers. However, I do not find this provision so involved with the balance of the statute as to taint the whole with invalidity. (*People ex rel. Alpha Portland Cement Co.* v. *Knapp*, 230 N. Y. 48.) It is significant that this arbitrary provision entered the statute by way of amendment. It is easy, therefore, to separate it and leave the statute in respect to the enforcement of the bond as it was before this particular amendment was added. (*People ex rel. Farrington* v. *Mensching*, 187 N. Y. 8; *Buffalo Gravel Corp.* v. *Moore*, 201 App. Div. 242, 248.)

I, therefore, favor reversing the judgment and denying the motion, with costs.

THOMPSON, J., concurs.

In each case: Judgment and order affirmed, with costs.