SAIGH v. COMMON COUNCIL OF CITY OF PETOSKEY.

1. AUCTIONS AND AUCTIONEERS—SUBJECT TO REGULATION.
   Although business of auctioneering is lawful and useful one, it is nevertheless legitimate subject of regulation to prevent abuses and frauds.

2. SAME—MUNICIPAL CORPORATIONS—ORDINANCES.
   Ordinance prohibiting auction sales of linens, laces, embroideries, etc., except by merchants who have been in business in city for one year, judicial sales, sales by executors or administrators, etc., is not prohibitive, but regulatory merely (1 Comp. Laws 1915, § 3307, as amended by Act No. 156, Pub. Acts 1927), and said ordinance and its classification are reasonable.

3. SAME—AUCTION SALES OF LINENS, ETC., SUBJECT TO REGULATION.
   Public in buying linens, laces, embroideries, etc., at auction sale, being handicapped practically as in buying jewelry, in that it is unable to judge of quality or value, reasons for regulating, by city ordinance, auction sales of jewelry, are applicable thereto.

4. CONSTITUTIONAL LAW—AUCTIONS—ORDINANCES.
   Ordinance prohibiting auction sales of linens, laces, embroideries, etc., except by merchants who have been in business in city for one year, judicial sales, sales by executors or administrators, etc., held, not to offend article 14, § 1, of the Federal Constitution.

Appeal from Emmet; Shepherd (Frank), J. Submitted April 10, 1930. (Docket No. 53, Calendar No. 34,820.) Decided June 2, 1930.

Bill by Salim A. Saigh against the common council of the city of Petoskey, a municipal corporation, Norman M. Risk, mayor, B. H. Halstead, city attorney, and Henry Harter, chief of police, to restrain prosecution of plaintiff for violation of a

As to validity of ordinance regulating auctions or auctioneers, see annotation in 31 A. L. R. 299; 39 A. L. R. 773; 46 A. L. R. 157; 52 A. L. R. 491.

city ordinance alleged to be unconstitutional. From decree dismissing bill, plaintiff appeals. Affirmed.

*J. M. Harris*, for plaintiff.

*B. H. Halstead*, for defendants.

CLARK, J. Plaintiff came to the city of Petoskey in July, 1929, intending to engage in selling at public auction, during the summer and resort season of that year, linens, laces, embroideries, and rugs, having rented a store building for the purpose. He was informed by the city clerk that he could not auction linens, laces, and embroideries because of an ordinance of the city. To test the ordinance plaintiff filed this bill. The ordinance was held valid. Plaintiff has appealed.

We quote a section of the ordinance:

"It shall be unlawful for any person or persons, firm or corporation, to sell, dispose of, or offer for sale in the city of Petoskey at public auction, or to cause or permit to be sold, disposed of or offered for sale in said city at public auction, any linen, laces, embroideries, or cotton material or linen and cotton material sold by the yard or made up in any form, whether the same shall be their own property, or whether they sell, dispose of, or offer the same at public auction, or cause or permit the same to be done, as agents, or employees of others: provided, that this shall not apply to judicial sales, or sales by executors, or administrators or to sales by or on behalf of licensed pawn brokers of unredeemed pledges in the manner provided by law, nor to the sale at public auction of the stock on hand of any person, or persons, firm or corporation, that shall, for the period of one year last preceding such sale, have been continuously in business in the city of Petoskey as a retail or wholesale merchant of linen, laces, embroideries, cotton material, or linen and

cotton material: provided, further, that such sale at public auction of the stock on hand of such merchant or merchants shall be held on successive days, Sundays and legal holidays excepted, and shall not continue for more than thirty days in all within the period of one year.''

Qualified witnesses testified of the kinds and grades of flax fiber from which.linen is made, of the difficulty of distinguishing, in the manufactured product, the quality and grade of material, of the fact that articles are made from cotton processed so that the average purchaser is unable to distinguish between linen and cotton. They also testified of difference in value of linens depending largely upon kind and quality of material used in the making, and of very marked difference in value of linen and cotton. The evidence establishes that the average purchaser of such goods is exposed to misfortune and easily to be defrauded. We quote from the opinion of the trial judge:

''It is a matter of general knowledge that the average citizen is unable by a cursory examination to determine with any degree of accuracy the value of jewelry, watches or precious stones. It requires no evidence of a duty and a right imposed upon municipalities to prevent the sale of such articles in such a manner as will afford greater opportunities than by ordinary sales, of imposing upon purchasers. But the courts could hardly be expected to take judicial knowledge, as in the so-called jewelry cases, of the necessity of protection of the people in the case of linens. But this want of general knowledge as to these articles in the present case has been supplied to the entire satisfaction of the court.

''It appears that by the process known as mercerization a gloss or sheen can be imposed upon

cotton fibers rendering them to the ordinary person indistinguishable from linen, a much higher priced and more highly prized material. The evidence adduced satisfied the court that 85 per cent. of the purchasers or would-be purchasers, with a cursory examination, would be unable to determine whether articles are composed of linen or mercerized cotton.

"It was further established that one operation of the laundry applied to mercerized cotton would take away all of its resemblance to genuine linen.

"The court is of the opinion that the testimony adduced brings the sale of linen and its cotton compound within the reasons which have satisfied so many courts, that city councils have authority to regulate the sales of jewelry at auction."

No point is made of lack of definiteness of the ordinance. Although the words "cotton material" seem to have been construed by the city before trial to mean cotton goods or goods made of cotton, there was in the trial neither pretense nor contention that the ordinance was applicable to sales of all cottons and cotton goods. Nor is there any contention of the meaning of the word "linen," whether it is used in the ordinance in its strict sense or in its general sense. In the trial the ordinance was treated as applying to all laces and embroideries, usually made of linen, sometimes of cotton, or of both, and to linen, in its general sense, whether made of linen or cotton or both, including tablecloths or covers of different types and kinds, napkins, and bed linens, including pillow cases, sheets, and spreads, and to handkerchiefs. As the parties have so construed and applied the ordinance, we will do likewise.

Plaintiff's contention in evidence that the buying public is less exposed to fraud and misfortune in

auction sales than in buying in stores in the usual way from merchants cannot be followed.

Granting that the business of auctioneering is a lawful and useful one, it is nevertheless a legitimate subject of regulation to prevent abuses and frauds, and the reason for this is that it is everywhere recognized that auction sales of merchandise are attended with greater risk of fraud and loss to the public than sales in the usual way by merchants. *People* v. *Gibbs,* 186 Mich. 127 (Ann. Cas. 1917B, 830); note 31 A. L. R. 299.

It is urged that the ordinance is prohibitive and therefore void as beyond the delegated power of the city in that 1 Comp. Laws 1915, § 3307, as amended by Act No. 156, Pub. Acts 1927, gave the city power to provide by charter merely "for the regulation of trade, occupations," etc. There is authority that the ordinance in a sense is prohibitive. *Mogul* v. *Gaither,* 142 Md. 380 (121 Atl. 32). There is authority that it is not prohibitive, because it does not wholly prohibit auctions of such goods; rather it places restrictions with which anyone may comply, and permits auctions under such restrictions. *Holsman* v. *Thomas,* 112 Ohio St. 397 (147 N. E. 750, 39 A. L. R. 760).

We are inclined to the latter view, and in this we are mindful of the practical effect of a later amendment of the statute by Act No. 126, Pub. Acts 1929, by which the city may provide by charter:

"For the regulation of trades, occupations and amusements within its boundaries, not inconsistent with State and Federal laws, and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants" (Section 4 i, subd. [4]).

We hold the ordinance to be regulatory merely.

If this ordinance regulated auctions of jewelry instead of linens, laces, and embroideries, it could be sustained on authority, as falling within police power, as reasonable and not discriminatory. See *Holsman* v. *Thomas, supra; Biddles* v. *Enright,* 239 N. Y. 354 (146 N. E. 625, 39 A. L. R. 766); note 39 A. L. R. 773; note 46 A. L. R. 157; note 31 A. L. R. 299.

The reason for the holding in the jewelry cases is stated in *Holsman* v. *Thomas, supra:*

"A classification is made by the ordinance. It does impose upon auctioneers of jewelry regulations different from those imposed by law upon auctioneers of other articles. However, there is a reason for this classification. The ordinance covers the sale at auction of jewelry, clocks, gold and silver plate, precious stones, and watches. There is a reason for rigid regulation of this business, which does not exist with regard to other kinds of auctions. The public is unable to test the purity of the precious metals upon sight; the public is unskilled in the value of gold and silver and diamonds. Scientific tests are necessary to establish the purity of such articles, and the practices followed in selling them by auction, with the competition which results in the contest, may result in actual fraud upon the property rights of the citizens. 'Any trade, calling, or occupation may be reasonably regulated if "the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the legislature can properly protect them." ' *People* v. *Beakes Dairy Co.,* 222 N. Y. 416 (119 N. E. 115, 3 A. L. R. 1260)."

As the evidence establishes that the public in buying the articles set forth in the ordinances is handicapped practically as in buying jewelry, in that it is unable to judge of quality or value, is unskilled

in respect of both quality and value, is easily deceived and a ready prey to fraud, we see no reason for refusing to apply the reasoning and the rule of the jewelry cases. We do apply them and hold therefore that the ordinance and its classification are reasonable. . See *Mogul* v. *Gaither, supra; Davidson* v. *Phelps,* 214 Ala. 236 (107 So. 86).

That the ordinance offends article 14, § 1, of the Federal Constitution, is answered by *Holsman* v. *Thomas, supra,* and cases there cited.

For the reasons urged, we decline to disturb the decree of the trial court.

There is no criticism of the trial court's declining to award costs, the question being of public interest. No costs are awarded here.

Affirmed.

WIEST, C. J., and BUTZEL, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.