In the Matter of the Application of GILBERT WEISS, Petitioner, for an Order against the DEPARTMENT OF PUBLIC MARKETS, WEIGHTS AND MEASURES and Another, Respondents.

Supreme Court, Special Term, Kings County, June 9, 1938.

*Julian V. Carabba* [*Lillian R. Kaplan* of counsel], for the petitioner.

*William C. Chandler, Corporation Counsel,* and *Francis J. Bloustein, Assistant Corporation Counsel,* for the respondents.

RIEGELMANN, J. Petitioner alleges that until the year 1938 he has been a duly licensed itinerant peddler, engaged in the business of selling ice cream and other frozen products, and that he has always complied with the various rules and regulations of the bureau of public markets. He states that on or about May 1,

1938, he applied to the respondent commissioner of public markets for a renewal of his 1937 license but that the latter refused to issue the same to him. At the time of the refusal, petitioner charges that he was informed that in order to obtain a renewal of the license "it would be necessary for him to apply as an employee of the Good Humor Co., Inc."

It is further alleged that certain individuals who had no license for the vending of the above commodity for the year 1937 received, subsequent to the date of petitioner's application for a renewal, licenses for the year 1938 "as employees of the aforesaid Good Humor Co., with the endorsement ' G. H.' being made upon such license."

Petitioner then states that he " has been able to conclude negotiations which will enable him to satisfactorily support himself and the members of his family, were the renewal of his last year's license, aforesaid, granted; that to deny such renewal would irreparably injure and damage the petitioner and lead to the loss of his means of livelihood, and his being thrown upon the sufferance of the relief bureau for his support and maintenance as well as for the support and maintenance of the members of his family."

In corroboration of certain of the foregoing allegations, there are submitted, as part of the moving papers, affidavits sworn to by certain individuals who aver that at certain dates prior to May 4, 1938, they applied to the commissioner for the issuance of licenses permitting them to operate as itinerant peddlers for the purpose of vending ice cream and other frozen products and that when it was ascertained upon inquiry that the particular applicant was promised employment with the Good Humor Ice Cream Company, without further delay, a license was issued. The affidavit of one George Freeberg indicates that two officials of the Good Humor Company took the affiant, together with some fifty other men, to the office of the commissioner of markets for the purpose of procuring licenses, at which time the applicants, without being individually questioned, obtained the necessary licenses. The affidavit of one Jack Tallman indicates that upon the occasion in question " all discussion concerning the issuance of the license was carried on by the Good Humor officials, who also advanced the fee of $10.00 therefor." These affiants swear that the licenses so issued to the individual applicants contained an indorsement thereon of the initials " G. H." Photostatic copies of the licenses thus issued completely corroborate petitioner's allegation that the indorsement " G. H." does in fact appear. It may be observed at this point that the significance of the specific indorsement is not readily apparent, nor is it made so after a due and careful consideration of the relevant provisions of law.

Petitioner's application is not opposed on the ground that he is unqualified for any reason to hold a license. On the contrary, the commissioner very bluntly states that such license was refused because it is his own particular belief that the public health and safety will be best served by barring all itinerant peddlers from the streets of the city of New York. The basis upon which the commissioner predicates his belief is substantially as follows:

Over 25,000 permits, licenses and certificates are issued annually by the department of markets permitting persons to engage in various types of businesses, such as coal dealers, poultry dealers, scale dealers, push-cart peddlers in street markets, stoop-line stands, ice manufacturers, and numerous others. It is alleged that: " Vendors of ice cream and other itinerant peddlers of all classifica- tions, have no definite place of doing business and it is impossible for an Inspector of the Department of Markets to supervise the operations on the part of these peddlers. They roam from place to place and are responsible to no one for their actions except, perhaps, to their employers. * * * Itinerant peddlers use the public streets for business purposes without regard to the rights of pedestrians or the operators of vehicles. * * * Many itinerant peddlers are irresponsible and have no code of ethics in the conduct of their businesses. They are insolent, uncouth and abusive (as demonstrated by certain copies of letters received by the Department from residents in the City, which have been attached as exhibits to the opposing affidavit); * * * the Police Department has time and again called deponent's attention to the fact that push-carts, automobiles and horses and wagons operated by itinerant peddlers interfere with pedestrian and vehicular traffic and endanger the lives and health of persons in the City of New York. Itinerant peddlers resort to all sorts of measures to attract attention in order to promote their sales. They stop their horses and wagons, push-carts or automobiles in the middle of the highways and hawk their wares, yelling at the tops of their voices and creating a disturbance and a nuisance. * * * The itinerant push-cart peddlers, over whom there is very limited supervision by the Department of Markets, keep their merchandise in an unsanitary condition. * * * No facilities are provided for the cleanliness of the peddler who handles the food products or his products, and no effort is made to protect the consumers against infection and disease. * * * In view of the great number of public markets designated by the Board of Estimate, as well as the large number of stores selling similar products, there is no necessity for the licensing of itinerant peddlers. The citizens of the City of New York will not be prejudiced if petitioner and

others similarly situated are not licensed. * * * The chaotic and intolerable conditions created by itinerant peddlers and existing in the field were explained to the company representatives (at a conference which the Commissioner held with manufacturers and distributors of products sold by the peddlers). Deponent called attention to the need for limitation of the number of peddlers. * * * After several hundred licenses had been granted, deponent issued an order that no licenses were to be issued after May 4th, 1938, regardless of whether the quotas were filled or not. * * * When the Department stopped issuing itinerant peddler's licenses, it was found that 92 licenses were issued to employees of Good Humor Corporation to operate automobiles and 255 for bicycles; for Queens Ice Cream Company, 53 for automobiles; for Sunnydale Ice Cream Co., 4 for automobiles and 2 for bicycles. 25 licenses to operate automobiles were issued to individuals and 2 were issued to bicycles. Since May 5th, when the Department stopped issuing licenses to itinerant peddlers permitting them to sell ice cream and other frozen products, many applications for such licenses have been denied. Employees of the Good Humor Corporation, as well as of other corporations who filed their applications, were denied licenses pursuant to deponent's ruling."

Possibly in an attempt to justify the issuance of licenses to the employees of a specific corporation, the commissioner's affidavit continues as follows: " After a number of years, deponent has found that a better check could be kept on itinerant peddlers and the sanitary conditions under which they operate if his Department co-operated with the manufacturers and distributors who supplied the product sold by the itinerant peddlers. It has been his experience that in dealing with itinerant peddlers who hire their vehicles from companies and work for a commission for them, they will conform to departmental regulations through company persuasion and requirement. In view of these facts, it was found much more expeditious to work through the various ice cream companies who manufacture and distribute their products for sale on the streets of the City in licensing itinerant peddlers for the sale of ice cream."

It is then stated that: " The conditions heretofore described and found existing in this industry, if it can be called such, lead to the conclusion that the limitation of the number of itinerant peddlers is designed to accomplish a public benefit and has a definite and effective relationship to the end sought to be accomplished in correcting known evils. Limitation under such conditions should be upheld and enforced."

In spite of the foregoing it is petitioner's contention that he has been illegally oppressed; that the respondent's action in refusing to issue the license " is arbitrary, capricious, tyrannical and unreasonable, and not the exercise of fair discretion, resulting in an unjust discrimination against certain people without cause."

I have stated in the foregoing discussion the argument upon which respondent substantially assumes the prerogative to deny to petitioner the right to engage in the business of peddling the commodity in question. Respondent overlooks the basic fact, however, that he is merely an administrative officer who is intrusted solely with the duty of enforcing such statutes and ordinances, and reasonable regulations thereunder, as may pertain to his office. He has not been given any prerogative to arrogate to himself a usurpation of legislative functions. An affirmative legal right, as conferred by the proper legislative body, has been given to all citizens, upon their compliance with reasonable and necessary regulations, permitting them at their own choosing to peddle the product which petitioner, as a member of the citizenry, seeks to sell. The action of the respondent, however, except as to such particular individuals or as to such specific number of persons as he chooses to favor by license, effectually nullifies a right which the law confers generally upon all applicants, irrespective of the number thereof and irrespective whether they are operating their own individual business or operating as employees of some particular corporation or concern. The only legal basis upon which the right to refuse a license may be predicated is that the applicant has failed to comply with the reasonably formulated regulations which are applicable to all persons alike. If in fact the public safety and welfare of the community require the abolition of the right to peddle, the subject is a matter, within proper constitutional limitations, solely for legislative attention. If the commissioner may refuse to issue a license upon the grounds above set forth, why may not the commissioner of motor vehicles, with equal cogency, refuse to issue any further registrations for automobiles, or the commissioner of buildings any further licenses for the construction of buildings, upon the ground that, in their own individual opinion, the addition of more automobiles or more buildings in the city is a hazard and a menace to the public safety and welfare.

A consideration of the provisions of law which define the commissioner's authority will instantly reveal that his powers are purely executory, administrative and regulatory. Such view has been recently upheld in *Matter of Smith* v. *Morgan* (253 App. Div. 239, 244). Those provisions of law do not empower him to abolish or to limit hawking, peddling or vending on the streets of the city.

For good and sufficient cause he may reject an individual applicant. He may not, however, usurp the law-making power, regardless of the merits which motivate such usurpation. (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157; *Matter of Goelet* v. *Moss*, 248 App. Div. 499; affd., 273 N. Y. 503.)

In *Matter of Picone* v. *Commissioner of Licenses (supra)* an application for an order of mandamus was brought to compel the commissioner to issue a license to the petitioner to operate a junk boat. The commissioner's refusal to do so was predicated upon the allegation that there was no room for further applicants for junk boats. That is substantially the argument here advanced. The Court of Appeals, reversing a denial of the motion for a mandamus order, said (p. 338): " If the commissioner could limit the number of junk boat licenses to one hundred we see no reason why he might not adopt the policy suggested by him that no licenses whatever should be granted and defend his action by asserting that he is convinced that the licensed junk boatman as such is an enemy to society and a menace to property in the harbor. The same reasoning might extend to junk shops generally and we would then have prohibition rather than the strict regulation of the business which has been imposed by ordinance. Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be."

Citing the *Picone* case with approval the Court of Appeals in *Matter of Sausser* v. *Department of Health* (242 N. Y. 66), reversing a determination denying an order of mandamus, held that the respondent could not arbitrarily reject the petitioner's application since he was concededly qualified to receive the license there demanded. To the same effect, see *Matter of Larkin Co.* v. *Schwab* (242 N. Y. 330).

The above cases have recently been referred to and the reasoning thereof applied in *Matter of Smith* v. *Morgan (supra)*, in which it was held that the commissioner has no power to abolish a public market. Said the court (at p. 246) in that case: " In the case at bar the commissioner has not refused to issue a license but has attempted eviction of all licensees, as the commissioner believes that the market may interfere with the flow of traffic to and from the Lincoln Tunnel. If the commissioner may revoke all permits in the Ninth Avenue Market, though none of the permittees has violated any rule or regulation, we see no reason why he may not adopt the public policy suggested by him in his 1936 report to the mayor; that is, ' the abolition of the push carts from the streets ' and, asserting that he is convinced that the operation of such

public push cart markets is ' an affliction to the city of New York ' and an ' evil,' revoke all permits in all city markets and thus completely abolish open air markets in the city of New York. The answer to this claim of power is the answer of the Court of Appeals in the *Picone* case: ' Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.' "

In conclusion it may be stated that respondent tersely alludes to the fact that petitioner omits to allege in his moving papers that " he is the owner of a vehicle." Respondent contends that pursuant to the provisions of chapter 36, title B, article 6, section B36–92.0, of the new Administrative Code he is, therefore, vested with discretion to grant or refuse a license to petitioner. The section reads as follows: " Designation of Vehicles. Upon the payment of such fee, the commissioner may issue a license to the owner of the vehicle, together with a plate, to be affixed to a conspicuous and indispensable part of such vehicle on which shall be set forth clearly the official number of the vehicle, with the words ' Licensed Peddler.' "

The foregoing section in no wise prescribes or limits the class of persons who are entitled to the issuance of a license. This conclusion is made readily apparent by a reference to the provisions of section B36–89.0 which states that: " Any person hawking, peddling, vending or selling merchandise in the streets of the city shall be deemed to be a peddler, and shall be classified as follows: A peddler using a motor-driven vehicle; a peddler using a horse-drawn vehicle; a peddler using a pushcart; and a peddler carrying merchandise on his person."

It will be noted that the section does not require, as a condition precedent to the issuance of a license, that a peddler be the owner of a vehicle.

Section B36–92.0, as its title would obviously seem to indicate, reasonably contemplates, when construed together with section B36–89.0, merely that a vehicle which may be used in the business of a licensed peddler shall be " designated " with appropriate identifying plates. Indeed, respondent does not insist herein that a license may lawfully be issued only to an owner of a vehicle, and he fails to allege that in fact vending licenses, including those granted to the employees of the concerns mentioned in his affidavit, have been issued only to owners of vehicles. Further, the basis upon which the commissioner predicated his refusal to renew petitioner's license was not upon the ground that the latter " did not own a vehicle " but, rather, for the reasons heretofore stated.

The motion is granted. Settle order on notice.