In the Matter of the Application of PERRY DEVITO, Petitioner, for Peremptory Mandamus Order against PAUL MOSS, Commissioner of Licenses of the City of New York, and WILLIAM FELLOWES MORGAN, JR., Commissioner of Public Markets of the City of New York, Defendants.

Supreme Court, New York County, February 7, 1939.

*Francis X. Mancuso*, for the petitioner.

*William C. Chanler, Corporation Counsel* [*David I. Shevitz* of counsel], for the defendants.

VAN VOORHIS, J. Petitioner Perry Devito is an ice dealer. On April 22, 1938, he obtained a license from the city of New York which in terms licenses him " to engage in the business of manufacturing and selling ice cubes at 3111 Cropsey Avenue, Brooklyn, either for domestic use or for packing or cooling purposes, or for both purposes, and to keep and use one vehicles (*sic*) in the City of New York in connection with the operation of the aforesaid business." The license further provided that it is subject to the strict observance of all laws, ordinances and regulations enacted for the protection of the city so far as they may apply, and that it is to continue in force for the period ending April 30, 1939, unless suspended or revoked. It contains the further statement: " This license is restricted to the classification and to the premises stated herein." On June 14, 1938, Mr. Devito made application for a reclassification of the same license so as to provide for " Manufacturing Ice Cubes and Self-Service Depot," which was denied. Thereafter and on August 11, 1938, he made a further application for reclassification as " Service Station." The latter application having likewise been denied, petitioner brings this proceeding to compel reclassification so as to authorize him to maintain a service station. The object is to entitle him to handle larger pieces of ice than cubes.

The matter originally came on for argument before Justice VALENTE, and was referred to Justice CHURCH who rendered the following opinion which appears in the New York Law Journal of November 10, 1938 (p. 1563): " Motion for peremptory order of mandamus granted to the extent of granting an alternative order. Issues of fact are created by the allegations in defendants' answer to the petition as to alleged purpose and intent of the petitioner as well as his alleged violation of his permit at 3111 Cropsey Avenue. Settle order." An order was entered thereon submitting two issues of fact for trial: " (1) Did the petitioner in securing his license to deal in ice cubes do so with the intent of ultimately obtaining an ice service station license? (2) Did the petitioner in the conduct of his business at 3111 Cropsey Avenue violate any of the terms and conditions upon which his license was issued? " These two questions have been tried before me without a jury.

The first question is answered in the negative. Petitioner denies that he secured his license to deal in ice cubes with the intent of

ultimately obtaining an ice service station license. The mere fact that his application as at first prepared contained the words " service station " as descriptive of the nature of the license applied for, and that these words were stricken out and " Mfg. and Sale of Cube ice " substituted, does not convict him of any purpose of evasion, nor does the fact that he subsequently applied to be reclassified as a service station establish an intent in existence at the time when the ice cube license was obtained. So much for the first question.

The second question involves mixed questions of law and fact. It must be construed to embrace whether the petitioner has violated any *valid* terms and conditions upon which his license to manufacture and sell ice cubes was issued. It was conceded on behalf of the defendants during the trial that the license which was issued to Devito entitled him to sell from his place of business, 3111 Cropsey avenue, Brooklyn, as a service station except that he was limited to the sale of ice cubes. Devito testified that after his license was issued he sold pieces of ice five cubic inches, ten cubic inches and fifteen cubic inches in size. The defendants contend that only the five cubic inch size is properly described as an ice cube, and that selling larger sized pieces was in violation of the terms of the license. Devito claims that the language " ice cube " refers to cubes of any size. In this the defendants appear to be correct. The word cubes as applied to ice has taken on a well-defined meaning and designates cubes of such size as can be contained in an ordinary drinking glass. Devito admittedly violated this provision of his license by selling ten cubic inch and fifteen cubic inch pieces provided that the restriction to the size of ice cubes was a valid limitation. I have concluded that it was not.

The Administrative Code of the City of New York (Art. 2, § B36–10.0, pp. 1140–1142) provides that it shall be unlawful for any person to engage in the business of manufacturing, harvesting, retailing or selling any ice in the city of New York without a license to retail or sell such ice either for domestic use only or for packing or cooling purposes only, or for both such purposes. Section B36–11.0 specifies that any person before engaging in such business shall file a written application with the commissioner of public markets for such license stating in such application the place or places where such ice is to be or has been cut, manufactured or gathered, the means of delivery, the location of the depot or places in the city from which such ice is to be delivered and the quality of the ice intended to be sold, and further provides that after the filing of such application and an investigation thereof duly made, the commissioner, if he approves such application, may recommend to the commissioner of licenses that a license be issued authorizing

the applicant to engage in such business conditioned upon compliance with the provisions of this article, and with the rules and regulations of the department of markets and the department of health. The next section, B36–12.0, states that upon receipt of such application approved by the commissioner of public markets, the commissioner of licenses, if it meets with his approval, may issue such license.

Although the commissioner of licenses is the authority that grants the license, it is done upon the recommendation of the commissioner of public markets and is conditioned upon compliance with the rules and regulations of the department of markets. The authority to impose the condition upon Devito's license limiting him to ice cube dimensions resided in the commissioner of public markets if it resided anywhere, and it is, therefore, necessary to examine the powers conferred by statute upon the commissioner of public markets to find out whether it is among them.

These powers are conferred by article 2 of title B of chapter 36 of the Administrative Code of the City of New York which was adopted by the Legislature and is chapter 929 of the Laws of 1937, and have been referred to above. That statute enables the commissioner of public markets to make and enforce rules and regulations for two purposes: (1) To insure the gathering, selling and delivery of pure ice, and (2) to " prevent profiteering in the distribution of ice for domestic use." (§ B36–17.0.) Only the latter purpose is involved here. The question is whether the action of the commissioner of public markets in limiting the size of ice to be sold by Devito to ice cubes bears a reasonable relation to the statutory power to prevent profiteering.

Undoubtedly the State may regulate business, however honest in itself, if it may become a medium of fraud. Any occupation may be regulated reasonably if the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature may properly protect them. (*People* v. *Beakes Dairy Co.*, 222 N. Y. 416, 427.) It is assumed that the sale of ice is affected with a public interest sufficient to authorize reasonable regulation to prevent profiteering as in the case of milk (*People* v. *Beakes Dairy Co.*, *supra*) or theatre tickets (*People* v. *Weller*, 237 N. Y. 316; affd., *sub nom. Weller* v. *New York*, 268 U. S. 319). Under these principles there is no doubt of the power of the commissioner of public markets to prescribe standard sizes for the sale of ice by volume or to adopt any other reasonable regulations to insure that the customer receives full value in the ordinary course of business. Undoubtedly the commissioner may establish cube ice as one of the standard sizes

which all ice dealers are permitted to sell, but that is a different matter from allowing one qualified ice dealer to sell merely one standard size and other ice dealers to sell other standard sizes. The latter is an arbitrary discrimination between ice dealers and is not related to preventing profiteering. The circumstances of this case indicate that the grievance which resulted in the objections to Devito's reclassification is not that he was making an exorbitant profit at the expense of the public, but, on the contrary, that he was underselling his competitors. No question is involved here concerning whether it would be constitutional for the Legislature to authorize the commissioner of public markets to fix prices so as to maintain a minimum charge to the consumer as in the case of milk. (*People* v. *Nebbia*, 262 N. Y. 259; affd., 291 U. S. 502.) The Legislature has not done so, but has merely authorized the commissioner to adopt regulations to prevent profiteering. (*Matter of Tannenbaum* v. *Department of Public Markets*, 152 Misc. 38.) It has been held that legislation limiting the number of those who may engage in the business of manufacturing and selling ice in order to control competition is contrary to the Federal Constitution. (*New State Ice Co.* v. *Liebmann*, 285 U. S. 262.)

It is noteworthy that various types of licenses for the manufacture and sale of ice have been established by general rules and regulations of the department of public markets and approved by the board of estimate (Exhibit 2, ¶ 2), thus:

" Licenses shall be qualified as follows:
" (a) Cellar — Retail dealer
" (b) Route
" (c) Storage
" (d) Manufacturer
" (e) Service Station
" (f) Wholesale Dealer "

This enumeration includes service station licenses but does not mention ice cube licenses. No distinction dependent upon the sale of ice in particular shapes, sizes or quantities enters into the principle of classification. In attempting to issue to Devito a license to engage in the business of manufacturing and selling ice cubes, the department of licenses granted a type of license not recognized by any general rule or regulation in so far as it purports to be subject to the said limitation which the testimony indicates was imposed solely upon the licensee and one other person outside of certain large manufacturers of cube ice only. The representative of the office of the commissioner of markets testified that of late years his department decided to discontinue issuing service station licenses, that about ninety per cent of those outstanding were

granted before 1935, and that at the present time it is the policy of the department to issue none whatever.

In *Matter of Picone* v. *Commissioner of Licenses* (241 N. Y. 157, 161) it was held that " if an applicant for a license can show that he is a fit and proper person to engage in the licensed business under the provisions of the licensing statute the licensing officer may not arbitrarily impose limitations not contained in the statute upon his right to do business; " and further (p. 162): " If the commissioner could limit the number of junk boat licenses to one hundred we see no reason why he might not adopt the policy suggested by him that no licenses whatever should be granted and defend his action by asserting that he is convinced that the licensed junk boat man as such is an enemy to society and a menace to property in the harbor. The same reasoning might extend to junk shops generally and we would then have prohibition rather than the strict regulation of the business which has been imposed by ordinance. Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be." In *Matter of Larkin Co.* v. *Schwab* (242 N. Y. 330) the court pointed out that in considering the power to issue a mandamus order for a license, permit or consent, the courts must take into consideration the limitations of the discretion which under the statute or ordinance is vested in the administrative body, and that refusal to grant a permit to a qualified applicant who fails to comply with conditions which the administrative body has no power to impose is arbitrary. (See, also, *Matter of Small* v. *Moss*, 277 N. Y. 501, 507.) Holding to the same effect are *Matter of Goelet* v. *Moss* (248 App. Div. 249); *Matter of Small* v. *Moss* (255 id. 1); *Matter of Radisch* v. *Morgan* (168 Misc. 258); *Matter of Weiss* v. *Department of Public Markets* (Id. 881).

It follows that when the commissioner of licenses granted Devito on April 22, 1938, a license to engage in the business of manufacturing and selling ice cubes at 3111 Cropsey avenue, Brooklyn, either for domestic use or for packing and cooling purposes, his action is to be construed as enabling the licensee at that address to engage in the manufacturing and selling of ice for such purposes but without the invalid limitation to ice cubes. This case differs from those cited in that here a license has already been granted, although subject to conditions which the licensing officer had no power to impose. Under these circumstances the whole license will not be regarded as void, but only the unauthorized restrictions. Consequently no violation of the terms of the license arose from the fact that petitioner did not confine himself to the sale of ice cubes.

The petitioner already has in substance the same legal rights which he has instituted this proceeding to secure.

It remains to consider whether there are any other laws, ordinances or regulations governing Devito's license that were violated by him. The statute provides: " All ice sold within the city shall be sold by avoirdupois weight or standard measurement, at the time of delivery." (N. Y. City Administrative Code, § B36–15.0, subd. c.) The last words are construed in the regulations to include standard cubic measurement. (Exhibit 2, ¶ 15.) Devito sold ice, according to his testimony, not by avoirdupois weight, but in cubes of five, ten and fifteen cubic inches in content. Were these sizes according to " standard cubic measurement? " If they were not, then the terms of the license were violated. The word " standard " evidently refers to some unit of measurement to be established by the commissioner. The record shows that no standards of cubic measurement were adopted (with the exception of a special definition of ice cubes adopted in June, 1938, not material here), except for paragraph 15 of the regulations (Exhibit 2), which provides as follows: " Every cake of manufactured ice sold in the City of New York shall weigh not less than 305 lbs. at the plant when sold. To insure the consuming public a full weight, all such ice shall be scored and no person shall sell such ice unless it has been scored. The scoring of ice shall mean the marking by the manufacturer of lines not less than one inch deep on each standard cake, which will insure the division of the standard cake into at least 12 equal clean cut pieces or other standard of scoring set by the Commissioner of Public Markets, Weights & Measures. All other ice sold within the City shall be sold by either avoirdupois weight or standard cubic measure." The language quoted does not indicate clearly what standard measurements, if any, it intends to prescribe. Apparently it defines 305-pound cakes of ice as standard and likewise pieces of ice of equal size not exceeding one-twelfth of 305 pounds. Whether such classification is reasonable may be open to doubt, but it is unnecessary to pass upon that question in this proceeding. If the regulation is valid, Devito did not comply with it inasmuch as he testified that the ten and fifteen cubic inch pieces that he sold weighed approximately forty and sixty pounds respectively, which are less than 305 pounds and more than one-twelfth thereof. On the other hand, if the regulation is assumed to be invalid, then in view of the undisputed testimony that no other standards of cubic measurement were adopted, Devito ran afoul of the above-mentioned requirement of the Administrative Code that all ice sold within the city shall be sold by avoirdupois weight or standard measurement at the time of delivery. That is to say, if no standard measurement

by volume was established, then he was obliged to sell by weight which he did not do.  Inasmuch as the statute and all valid regulations entered into the terms of Devito's license, it is, therefore, held that there was a violation by him in that he sold ten and fifteen cubic inch pieces which were not by avoirdupois weight or standard measurement at the time of delivery, and the second question is answered in the affirmative.  It may easily have been unintentional in view of the confusing nature of the regulations.  An iceman ought not to be deprived of his means of livelihood for misinterpreting municipal regulations that are so obscure that courts and lawyers have difficulty in understanding them.  If the foregoing reasoning is correct, answering these questions is academic inasmuch as the petitioner already enjoys the same legal rights which he would have if his application for reclassification as a service station had been granted.

Let an order be entered in accordance with the foregoing to be settled on notice.