In the Matter of NEW YORK GOOD HUMOR, INC., and GEORGE ECK, Petitioners, for a Final Order against WILLIAM FELLOWES MORGAN, JR., as Commissioner of Markets of the City of New York, Respondent.

Supreme Court, Special Term, New York County, June 17, 1939.

*Spence, Windels, Walser, Hotchkiss & Angell* [*Kenneth M. Spence* and *Paul Van Anda* of counsel], for the petitioners.

*William C. Chanler, Corporation Counsel* [*Francis J. Bluestein* of counsel], for the respondent.

HAMMER, J. George Eck has been employed by New York Good Humor, Inc., as a peddler of its ice cream products on a commission basis, in 1936, 1937 and 1938. Each year Eck applied for and was granted a license under chapter 36, article 6, of the Administrative Code and corresponding prior provisions of law. The employer furnished a commercial motor vehicle to Eck. About April 10, 1939, with the employer's consent and approval, he applied for a similar license and tendered the fee required by law. The commissioner of markets and his subordinates acting under his instructions refused the license sought on the ground that Eck did not own the vehicle to be used. New York Good Humor, Inc., and Eck have petitioned this court for an order requiring the commissioner respondent to issue the license sought. Respondent answers that the Code provisions vest him with discretion to refuse such a license when the applicant is not the owner of the vehicle to be used. In support of this he states there are 25,000 permits issued by his department, 75,000 places maintained for weighing and measuring apparatus to be used, department inspectors make inspections to insure compliance with requirements in respect of scales, weights and measures, itinerant peddlers have no definite places of business and it is impossible to regulate them, of whom many are irresponsible, insolent, unfair and abusive in conducting their business. The commissioner alleges their vehicles interfere with and obstruct traffic and endanger the lives, safety and health of the people of the city, and are detrimental to the general welfare, their foods and merchandise being kept and offered for sale in an insanitary manner, in dilapidated containers, and fire hydrants are used as supports and hazards are thus created in the event of fire. The further allegations are made that complaints are made to the commissioner of dishonest, unfair and offensive practices by peddlers in carrying on business, the number of departmental inspectors and supervisors are insufficient for adequate and proper regulation and the peddlers litter and strew the streets with paper, garbage and other refuse which costs the city several hundred thousand dollars to remove, and 500,000 man hours per year are devoted by the police force to suppress peddlers' illegal activities. The conclusion is reached by the commissioner that consumers are adequately provided with sufficient retail service by the large number of public markets and retail stores and the fear is expressed that

millions of people visiting the World's Fair will be exposed to the unfair business practices of the peddlers and unfavorably influenced by their insanitary conditions and the refuse and litter they strew about the streets. There are annexed to respondent's opposition papers photographic exhibits which indicate that in respect of the particular peddler or instance portrayed the commissioner is not without some justification were his statements confined exclusively to them. It is unnecessary to decide whether the errors, omissions or faults of these portrayed, in number some fifteen, running from Exhibit C to Exhibit Q, justify the sweeping condemnation seemingly visited upon the large number who are conducting their legitimate business under statutory authority and permit of the city. Even if the respondent commissioner or other departments to which reference is made could be regarded as in any degree justified in the criticisms and opposition expressed to peddlers and led to the conclusion that street peddling is an evil which should be eliminated, the remedy does not rest with them unless a full measure of official duty cast upon them by law would eliminate the transgressions alleged. The remedy lies in legislation and not in a refusal to reasonably exercise functions granted to and required of the commissioner by law. Laws are made by the law making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be. (*Matter of Picone* v. *Commissioner of Licenses*, 241 N. Y. 157; *Matter of Smith* v. *Morgan*, 253 App. Div. 239.) There is no photographic exhibit depicting any act or omission of either petitioner, or indicating the vehicle, its containing apparatus, or the merchandise sold previously or which it is contemplated will be offered, which has come or will come within any of the scathing denunciations in the derelictions alleged generally against peddlers.

The provisions of chapter 36, title B, article 6, section B36–92.0, of the Administrative Code do not require, as a condition precedent to the issuance of a license, that a peddler be the owner of a vehicle. Section B36–89.0 provides: " Any person hawking, peddling, vending or selling merchandise in the streets of the city shall be deemed a peddler and shall be classified as follows: A peddler using a motor-driven vehicle; a peddler using a horse-drawn vehicle; a peddler using a pushcart; and a peddler carrying merchandise on his person."

This is also the construction given to the statute by RIEGELMANN, J., in *Matter of Weiss* v. *Dept. of Public Markets* (168 Misc. 881 [Kings County, 1938]), where respondent was required to issue a similar license to a person vending ice cream from a vehicle not owned by him. The peddler is the user. The identifying plates

are issued to the owner and required to be affixed on the vehicle to designate it as that used in the vending.

The applicant for the license here has shown he is a fit and proper person to engage in a licensed business under the provisions of the licensing law and the respondent licensing officer has shown nothing to the contrary. No limitations upon the authorized right to do business not contained in the law may be imposed by the administrative official. All citizens upon compliance with the reasonable and necessary regulations, who show themselves to be within the provisions of the license law are entitled upon their own choice to peddle their lawful merchandise. The applicant here has complied with every reasonable and necessary regulation, and has duly filed a proper application for license. Refusal to issue the license on the grounds stated must be held to be an usurpation of legislative functions by an administrative officer not intrusted by law with any such power. The facts shown sustain the petitioner's claim that respondent's refusal to issue the license was arbitrary, capricious and unreasonable, and the relief sought in the nature of a peremptory order of mandamus should be granted. (*Matter of Smith* v. *Morgan, supra; Matter of Picone* v. *Commissioner of Licenses, supra; Matter of Katis* v. *Morgan*, 168 Misc. 552; affd., without opinion, 254 App. Div. 860 [1st Dept. 1938]; *Matter of DeVito* v. *Moss*, 170 Misc. 170 [New York County, 1939]; *Matter of Weiss* v. *Dept. of Public Markets*, 168 id. 881 [Kings County, 1938]; *Matter of Radisch* v. *Morgan*, 1d. 258 [New York County, 1938]; *Matter of Tannenbaum* v. *Department of Public Markets*, 152 id. 38 [Kings County, 1934].)

Application granted. Settle order.