Irving H. Saypol, J.
TIP is the acronym for both truth-in-pricing and truth-in-packaging. This case is about the first TIP. It has had the close official attention and pursuit of New York City’s Commissioner Bess Myers on Grant’s Department *645 of Consumer Affairs. Her TIP she described as “ A Proposal For Marking Retail Grocery Offerings to Show Their Price Per Measure and Thereby Enable Consumers To Know What They Are Getting For Their Dollar.” Commissioner Grant’s project is directed to compelling grocery retailers in New York City to maintain a continuing disclosure of the unit price, per pound or quart, for the things they sell. Both Mrs. Grant’s TIP and the other TIP (truth-in-packaging) are written up in Consumer Reports, January 1969, pages 40-43. Between the two TIPS, succinctly, it may be expressed that all of us as consumers are mesmerized in our grocery purchases. Odd sized and. shaped packaging, partly filled containers, fractionally filled containers, “ Large “ Extra Large ” and “ Giant ” loaves of bread, mean nothing comparatively: — which really is the largest and most economical. These practices, perhaps, are the reasons why even Judges on a shopping errand, say for a jar of mustard, or a container of milk come out with $10 purchases. Regarding Commissioner Grant’s TIP, here is its description in Consumer Reports (supra, p. 40) :
“ ‘We can’t compare prices, ’ housewives complained during the long fight for a truth-in-packaging bill. Can prices be compared now, two years after the Federal Fair Packaging and Labeling Act was signed into Law?
‘ ‘ The troublemaker has been the odd-sized package, which almost completely superseded the pound, the pint and the quart as basic pricing units for household commodities. All manner of peculiar package sizes boggled the mind, often with deception intended. Manufacturers instituted the practice of ‘ packaging to price ’ — taking covert price increases by cutting quantity. A 150-sheet box of tissues quitely dropped in quantity to 125, say, or a 16-ounce can of vegetables to 14% ounces — with no reduction in price.
“ Down the long self-service aisles, the package has done the selling. Some consumers may have found cart-shopping more convenient and efficient than waiting while the corner grocer pulled down a package from a ceiling-high pile with his long-handled clamp. But the grocer at least knew his prices per pound — and would tell you. The odd-sized package defied you to find out for yourself. Somewhere — anywhere — on the surface of the can, bag, box, carton, or bottle a statement of net quantity lurked. Somewhere else, usually, was a price, often smudged and indecipherable. Once you’d managed to ferret out the pertinent data, all you had to do was engage in some modest calculating. • Let’s say a box of detergent was labeled ‘ 1 lb. 7 oz. net weight ’ and stamped ‘ 3/89.’
*646 Step 1: Convert odd-sized quantity to total ounces (1 pound 7 ounces equals 23 ounces).
Step 2: Convert multiple price into price per package (3 for 89^5 comes to about-30^ a package) or price per total ounces (3 times 23 equals 69 ounces for 89^).
Step 3: Divide price by quantity to get price per ounce (30^ divided by 23 ounces or 89$i divided by 69 ounces equals about 1.3^ per ounce).
Step 4: Convert price per ounce to price per pound or pint, frequently a more realistic measure of effect on the purse (16 times 1.3^ equals about 21^ per pound).
Step 5: Repeat process for the several competing brands and sizes of the same product.
Step 6: Make whatever quality judgments you can, based on almost no label information about comparative quality.
Step 7: Make a selection based on price, quality judgment and brand preference.

The prowling computer

“ t A woman in a store is a mechanism, a prowling computer,.’ said Scott Paper Co. when arguing against truth-in-packaging legislation. To be a successful comparison shopper, one really did have to be some kind of calculating machine. But few women are.”
The plaintiffs move for an injunction pendente lite pursuant to CPLR 6301, in their action for a declaratory judgment and a permanent injunction to bar enforcement oí .regulation 49 of Department of Consumer Affairs, as amended, which was promulgated on September 26, 1969 and was to become effective on February 20,1970. The defendant has answered. Neither party seeks summary judgment.
The challenged regulation, as amended, reads as follows:
“ Regulation 49. Display of Price by Quantity Required — Any commodity sold, exposed for sale or offered for sale at retail, shall be plainly marked by stamp, tag, label, or sign at the point of display as follows:
“ (a) Any commodity, whether edible or inedible, sold by weight, standard measure or numerical count, shall be marked so as to display its total selling price, (b) The following commodities, however packaged or contained when offered for retail sale shall indicate the appropriate price per measure as well as the total .selling price:
“ (i) meat and fish
‘ ‘ (ii) cereals
“ (iii) cooking oils
“ (iv) carbonated soft drinks and beer
*647 “ (v) napkins, facial tissue and toilet tissue
“ (vi) bread
“(c) The appropriate price per measure shall be defined as:
“ (i) the price per pound for non-liquid items measured by volume
“ (ii) the price per quart for liquids
“ (iii) the price per fifty units for non-liquid products sold by numerical count.
‘ * This change shall become law in 30 days. ’ ’
The following explanatory note was published in the City Record immediately following regulation 49: “ The amendment will require that consumer commodities sold at retail indicate the price per appropriate unit of measurement to the nearest tenth of one cent. The price per measure of a commodity shall be conspicuously, plainly and clearly ¡shown by a stamp, tag or label on the commodity or on the shelf of which it is displayed, or by a sign or list of prices per measure posted at or near the point of display. A sign or list of prices per measure posted in the aisle where the commodity is displayed shall be deemed to be ‘ near ’ the commodity and in compliance with this regulation.
“Note that for commod’^^s sold by six or eight pack, the appropriate price per measisle shall be computed on the basis of the total pack cost divided > uc'he total pack net contents. For example, 95^ for a six pacilili0A' 2 ounce cans of soda should be displayed as 95^ at 42.4^ pe[
In April and May, 1969, tJBjWpartment of Consumer Affairs conducted a .study to deterwhether the then existing price marking and packaging puHfces provided adequate information to grocery .shoppers aseTthe real value of their purchases. On May 26 and 27, 1969, puWie hearings were held. Regulation 49, as originally promulgated in 1965, required retailers to post the total selling price of retail commodities sold by weight measure or numerical count: Finding inadequate the required information for shoppers to select ‘ ‘ the best buy ’ ’ among competing products, the Commissioner promulgated the challenged amendment which requires food retailers to post in addition to the total selling price, the unit price or price per measure on six enumerated classes of commodities. The defendant Commissioner has reported that her TIP amendment is intended to complement the protection afforded under the 1966 Federal Fair Packaging and Labeling Act. (Public Law 89-755; 80 U. S. Stat. 1296.)
It is the plaintiffs’ contention that for various reasons it was in excess of the power of the Commissioner to amend regulation *648 49 so as to require price-per-measure marketing on the products enumerated in the amended regulation. It is my opinion that in the circumstances there are sufficient doubts concerning the validity of the amended regulation to warrant the issuance of a temporary injunction. The case should proceed promptly to trial.
The Department of Consumer Affairs was established by Local Law No. 68 of 1968. This law added a new chapter 64, entitled ‘1 Department of Consumer Affairs ’ ’ and containing sections 2201 to 2204 inclusive, to the New York City Charter. The powers of the Commissioner set forth in section 2203 include the following: “(b) The commissioner shall enforce all laws in relation to weights and measures “(d) The commissioner shall enforce all laws relating to the advertising and offering for sale and the sale of all commodities, goods, wares and services “ (e) The commissioner, in the performance of said functions, shall be authorized * * * to promulgate, amend and modify rules and regulations necessary to carry out the powers and duties of the department.”
Regulation 49 as originally promulgated on July 28, 1965 provided: “Any commodity, whether edible or inedible, sold, exposed for sale or offered for sale at retail, shall have conspicuously, plainly and clearly displayed the price per unit of weight, dry or liquid measure, or numerical count by a stamp, tag, or label or by a sign at the point of display.”
The regulation was challenge by various art dealers operating art galleries. In Art Dealers Assn. of Amer. v. Pacetta (48 Misc 2d 22) this court (GELLINOFF,J.) granted the plaintiffs’ motion for a temporary injuncti^Ko the extent of enjoining the Commissioner of Public Marlq* from enforcing the regulation as to the plaintiffs. Subsemently, this court, on the basis of Justice Gellinoff’s decision, granted summary judgment to those plaintiffs. (Index No. 12850/1965, decision of Dec. 28, 1965 — Streit, J.) In granting summary judgment, Justice Streit commented on Justice Gellinoff’s decision: “ The decision rests upon the broad ground that the Commissioner lacks the statutory power to adopt Regulation 49, at least as to the sale of products which are not sold by weight or measure. For the reasons stated in the decision of Mr. Justice Gellinoff (264 N. Y. S. 2d 173 [48 Misc 2d 22]), plaintiffs are entitled to summary judgment on the ground that the promulgation of Regulation 49 was unauthorized by the statutory provisions which define the powers of the defendant Commissioner.”
While the plaintiffs assert that the preceding decisions in Art Dealers Assn. of Amer. v. Pacetta, (supra) mandate simi *649 lar disposition on the merits here, I find that it is unnecessary for present purposes to give such binding effect to those decisions, which concerned the sale of works of art (which are not sold by weight or measure) and which expressly left open the question of the validity of the regulation vis-a-vis products other than works of art (48 Misc 2d 22, 25). Nevertheless, Justice Gellinoee’s reference to New York State and New York City legislation dealing with weights and measures (id., pp. 23-25) is a guide and forms the bases of a good deal of the plaintiffs’ arguments.
The first contention of the plaintiffs is that the defendant Commissioner has no power to legislate and that the challenged regulation 49 is essentially an act of legislation. They refer to Matter of Picone v. Commissioner of Licenses (241 N. Y. 157, 162) where Judge Pound, afterwards Chief Judge, .stated: ‘1 L'aws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be ’ ’, and Matter of Weiss v. Department of Public Markets, Weights & Measures (168 Misc. 881, 885) where this court characterized the Commissioner of Markets, in general a predecessor of the present defendant, as ‘ ‘ merely an administrative officer who is entrusted solely with the duty of enforcing such statutes and ordinances, and reasonable regulations thereunder, as may pertain to his office.”
In the brief of the Corporation Counsel, representing the defendant Commissioner, it is stated: “ The Commissioner of Consumer Affairs in promulgating Regulation 49, as amended, has not undertaken a legislative function but has merely carried out her powers and duties to implement the existing legislation dealing with weights and measures.” Let us consider the validity of this assertion, remembering that under section 2203 of the New York City Charter the Commissioner is given the power to ‘ ‘ enforce all laws in relation to weights and measures,” to “ enforce all laws relating to the advertising and offering for sale and the sale of all commodities, goods, wares and services,” and to “ promulgate, amend, and modify rules and regulations necessary to carry out the powers and duties of the department.” The primary thrust of the Commissioner’s regulation-making power is the enforcement of duly enacted laws, enacted by the legislative bodies, either the State Legislature or the City Council.
State laws relating to weights and measures are found in article 16 of the Agriculture and Markets Law. Apparently, the only express reference to price per measure or unit price *650 marking appears in subdivision 4 of section 193, applicable only to retailer-packed products. This subdivision provides: ‘ ‘ All food and food products which are packaged or wrapped by the retailer in advance of being exposed or offered for sale by the retailer shall be accurately marked in such form or manner as may be prescribed by the commissioner, with (a) the net weight or standard measure or numerical count; (b) the selling price per pound or unit of standard measure, and (c) the total selling price.”
Pursuant to section 196-a of the Agriculture and Markets Law, the State Commissioner of Agriculture and Markets has issued various regulations. Chapter V thereof, entitled “ Weights and Measures ” (1 NYCRR Part 221) relates to the subject at issue, but contains nothing about price per measure or unit price markings.
Turning to the New York City Administrative Code, we find two specific legislative enactments requiring the display of price per measure or unit price for particular commodities. Section B36-10.0(e) requires ice dealers to post “ on their vehicles and premises a price list showing the sale price of ice by weight, or standard measure. ’ ’ Subdivision a of section B36-103.0 requires that sellers of gasoline keep posted on their individual pumps the selling price per gallon of gasoline.
The plaintiffs maintain that these examples of specific legislative enactments emphasize the defendant Commissioner’s lack of power to regulate other commodities. This argument, though not necessary to the narrow holding in Art Dealers Assn. of Amer. v. Pacetta (48 Misc 2d 22, 24-25, supra) was accepted by Justice Gellinoff: “ No provision of either the Agriculture and Markets Law or of the Administrative Code empowers the Commissioner to require the display of prices for articles other than prepackaged food and food products, ice and gasoline. The fact that the State and city legislative bodies authorized the Commissioner to require the posting of prices in only the specific instances referred to above is a strong indication that the Commissioner was not intended to have that power as to other products.”
While, as noted, the quoted language was dictum, at this stage of the case, on an application for a temporary injunction, the court is inclined to follow the express reasoning therein.
The plaintiffs further contend that regulation 49 is arbitrary and capricious. They state in their brief:
“ The problems with which Mrs. Grant [the defendant Commissioner] is concerned were not caused by food retailers. She correctly anticipates that food retailers will be forced into *651 boycotting all but those products which have universal appeal. Packages containing odd quantities, along with products offered in many different sizes, cannot, because of time requirements, be marked with unit prices. Secondary lines will be eliminated from grocers ’ .shelves. Eventually Mrs. Grant expects that the proliferation of products, new and old, will decline into an insignificant number, all uniformly packed, for consumers whose diets have been pre-selected indirectly by regulation.
“ Short product lines, price stability and the absence of change will become the hallmark particularly of the neighborhood grocery. Specials and sales will become too expensive, because of the costs imposed on retailers who will be required to unit price mark every .sale item. In the end the grocer and the consumer will lose.”
The practical effect, in operation of the amendment, is graphically portrayed. Large supermarkets stocking as many as 8,000 different products, reprice twice a week or 104 times a year. Individual entrepreneurs, the little neighborhood grocer, “ Poppa and Momma ” stores as they are denominated here, would need a considerable intellectual genius to do the calculating gymnastics required for compliance.
A court may not ordinarily be concerned with the wisdom of regulation 49 (although I think that the general objectives of the regulation, if practicable in operation, are good). However, on this application for an injunction pendente lite, I must consider the hardship and plight of the grocer, especially the small, independent owner of a neighborhood store. Enough has been shown, to indicate that at this stage of the action immediate enforcement of the regulation might produce serious, if not confiscatory, consequences to the plaintiffs and others similarly circumstanced. No harm can result in the issuance of the injunction inasmuch as an immediate trial on the merits is being simultaneously ordered.
The plaintiffs urge additionally that even a local law embracing the provisions of regulation 49 would be invalid because article 16 of the Agriculture and Markets Law manifests an intention on the part of the State Legislature to occupy or pre-empt the entire field of labeling and packaging laws. It is, of course, unnecessary to determine this issue at this time. (On the question of pre-emption, cf. Wholesale Laundry Bd. of Trade v. City of New York, 17 A D 2d 327, affd. 12 N Y 2d 998; Matter of Kinney Motors v. Tyler, 32 A D 2d 612.)
The motion for a temporary injunction is granted and the action is ordered for prompt trial.